1

2

3

4

5

6

7

8                  **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  THOMAS KITCHEN,                           No. CIV S-06-0649-GEB-CMK-P

12              Plaintiff,

13        vs.                                 <u>FINDINGS AND RECOMMENDATIONS</u>

14  JOANNE HENDRICKS, et al.,

15              Defendants.

16  _____/

17              Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18  to 42 U.S.C. § 1983.  Pending before the court are defendants' motions for summary judgment

19  (Docs. 50, 58, and 60).

20

21                          **I.  BACKGROUND**

22        **A.      <u>Plaintiff's Allegations</u>**

23              This action proceeds on plaintiff's first amended complaint (Doc. 8).  Plaintiff

24  names as defendants:  (1) Asa Hambly, a doctor; (2) Joanne Hendricks, a nurse; and (3) Padilla, a

25  correctional officer.  In his amended complaint, plaintiff states that he has a hernia which causes

26  him serious pain and discomfort.  Plaintiff alleges that, while incarcerated at the Placer County

1  Jail, he requested to see a medical expert to determine whether surgery would be effective but

2  that defendants denied his request.

3                   As revealed by the documents attached to an earlier request for judicial notice,

4  plaintiff raised a claim relating to medical care in a state court habeas petition.  As outlined in the

5  state court's March 7, 2006, order, that petition involved the following claim:

6              . . . The petition alleges that petitioner was not receiving proper
            medical care at the Placer County Jail.  Thereafter, this court requested the
7            jail medical staff to informally respond to petitioner's allegations.  The
            response, dated February 1, 2006, was received and considered by the
8            court.  Petitioner's reply to the informal response was dated February 13,
            2005, but received by the court on February 21, 2006.  As indicated above,
9            this court has considered the material submitted in petitioner's reply.
            Based on a review of all the material submitted by petitioner and
10           the jail medical staff, the court determines that petitioner is receiving
            medical services in accordance with established standards of medical care.
11           The surgery petitioner requests, under the current circumstances, is
            considered elective.  The jail medical staff is not required to perform
12           elective surgery.

13  The state court denied the petition.

14       **B.        Prior Ruling on Defendant Hendricks' Motion to Dismiss**

15                   Defendant Hendricks moved to dismiss the action in its entirety, arguing that the

16  state court's ruling in the habeas case precludes the instant action.  The district judge did not

17  agree.  The district judge reasoned as follows:

18              Defendant Joanne Hendricks argues that this case should be
            dismissed because Plaintiff's state habeas proceedings resolved the issues
19           presented in this action.  Specifically, Defendant Hendricks contends that
            the state court adjudicated the same issue presented herein when it rejected
20           Plaintiff's claim that he was receiving "improper, inadequate and
            indifferent medical care" at Placer County Jail. (Def. Hendricks's Mot. to
21           Dismiss at 2, 6).  "The doctrine of issue preclusion prevents relitigation of
            all issues of fact or law that were actually litigated and necessarily decided
22           in a prior proceeding.  In both the offensive and defensive use situations
            the party against whom estoppel [issue preclusion] is asserted has litigated
23           and lost in an earlier action.  The issue must have been 'actually decided'
            after a 'full and fair opportunity' for litigation." Robi v. Five Platters, Inc.,
24           838 F.2d 318, 322 (9th Cir. 1988) (internal citations and quotation marks
            omitted).  However, it is unclear from the record before this court that the
25           state court adjudicated the same precise issues that are presented in this
            action, or that the issues presented in this action were fully and fairly
26           adjudicated in the state court proceedings.

2

On March 7, 2006, the state court denied Plaintiff's writ of habeas corpus, which "allege[d] that petitioner was not receiving proper medical care at the Placer County Jail," and determined that, as of that time, "petitioner [was] receiving medical services in accordance with established standards of medical care [since] [t]he surgery petitioner request[ed], under the circumstances, [was] considered elective [and] [t]he jail medical staff is not required to perform elective procedures." (Ex. G to Req. for Jud. Notice (Mar. 7, 2006 Amended Order Denying Petition for Writ of Habeas Corpus), at 2) (footnote 1 to district judge order omitted). Although the state court determined that Plaintiff was receiving adequate medical care, the specific issue addressed in the state court proceedings was whether the denial of the surgery that Plaintiff requested constituted a violation of Plaintiff's rights. (Id.; see also Ex. A to Req. for Jud. Notice (Plaintiff's State Court Petition for Writ of Habeas Corpus, filed Jan. 17, 2006 in Placer County Superior Court), at 8, 17 (alleging that Defendants' "refus[al] to treat" Plaintiff's inguinal hernia violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, and requesting that the court "[o]rder immediate procedures to correct petitioner's medical complication"); see also Ex. F to Req. for Jud. Notice (Plaintiff's Reply to Placer County Jail's Informal Response to Petition for Writ of Habeas Corpus, filed Feb. 24, 2006 in Placer County Superior Court), at 3 (stating that Plaintiff "wish[ed] for the surgery.")).

Plaintiff's initial complaint in this action was filed on March 28, 2006, and Plaintiff's amended complaint in this action was filed on April 18, 2006.  The amended complaint alleges that Plaintiff "requested to see a surgeon or other specialist to determine if hernia repair would end the pain *or* if there may be another cause for the extreme pain" and that the request was denied. (Am. Compl. at 2 (emphasis added)). Plaintiff requests that "the court order [the correctional institution's medical group to] schedule a surgeon or expert[] appointment to determine the true cause for [Plaintiff's] pain." (Id. at 3).  The issue presented in the current action, therefore, is whether the denial of Plaintiff's request for further consultation constituted a violation of Plaintiff's rights.

Because Plaintiff's state habeas petition and the state court's order focused specifically on whether the correctional institution was required to provide Plaintiff with the surgery he requested, it is unclear whether that court adjudicated the precise issue presented in this action. Moreover, it is unclear whether Plaintiff's allegations in the current action are based on conduct that occurred after the state court decision issued since it is unclear whether the request for further consultation that Plaintiff references in his amended complaint was made and/or denied after the state court decision issued (Plaintiff indicates in his Amended Complaint that he learned that "the request [to see a surgeon] was denied by [Defendant Hendricks] . . . after [his] initial complaint was filed") and because it is also unclear whether Plaintiff's condition became more serious after the state court decision issued.  See In re Universal Life Church, 128 F.3d 1294, 1300 (9th Cir. 1997) (finding that collateral estoppel did not apply since "the issues presented [were] not in substance the same as those presented in the prior litigation in question, and a controlling fact [] changed significantly since the prior judgment."); Harkins Amusement Enters., Inc. v. Harry Nace Co., 890 F.2d 181, 184

1   (9th Cir. 1989) (finding that collateral estoppel did not bar certain claims
2   since "the plaintiff allege[d] facts which by the defendants' own
    concession [were] at least 10 percent different from the facts alleged in
    [the prior action], and, of course, the plaintiff allege[d] conduct that
3   occurred in a different time period").   Plaintiff now contends that, after
4   being transferred to a different correctional facility, he was "granted a
    consultation with a specialist" and that the ultrasound he was given
5   revealed "a lump in his testicle." (Pl.'s Obj. to F&R's at 2).  Plaintiff
    further indicates that the scrotal sonogram he received revealed that, in
6   addition to the "mild and uncomplicated" inguinal hernia that he had been
    diagnosed with prior to the time of the state court decision and that was
7   the only condition the state court appears to have been aware of, he also
    has a "left epididymal head cyst" and the inguinal hernia is "with
8   peristaltic bowel in the canal."[2] (Pl.'s Suppl. Filing of Supporting
    Documents at 2; see also Ex. D to Req. for Jud. Notice (Letter from Dr.
9   David Duncan in Response to Petition for Writ of Habeas Corpus, filed
    Feb. 1, 2006 in Placer County Superior Court) (stating that Plaintiff's
10  "inguinal hernia has remained mild and uncomplicated.").)

11  At footnote 2, the district judge added:  "It is unclear when these conditions developed and/or

12  whether these conditions are more serious than an uncomplicated inguinal hernia.  The court

13  continued by stating:  "Plaintiff also indicates that "he is [now] scheduled for surgery to alleviate

14  the ongoing pain."[3] (Pl.'s Suppl. Filing of Supporting Documents at 3)," and added the following

15  at footnote 3:

16          Although Plaintiff appears to have already received the primary
        relief he seeks in this action since he has now seen a specialist and will be
17      receiving surgery to alleviate his pain, this action is not dismissed because
        Plaintiff also requests "any other relief deemed just and proper" and
18      because a plaintiff may be entitled to damages even if a complaint seeks
        only injunctive and declaratory relief.  Z Channel, Ltd. v. Home Box
19      Office, 931 F.2d 1338, 1341 (9th Cir. 1991); see also Franklin v. State of
        Oregon, 662 F.2d 1337, 1347-48 & n. 13 (9th Cir. 1981) (stating that
20      courts should construe pro se pleadings liberally).

21  The district judge continued his analysis as follows:

22          Moreover, it is unclear whether the issues adjudicated in
        the state court action were fully and fairly adjudicated therein since the
23      state court based its decision to deny Plaintiff's petition for writ of habeas
        corpus on only Plaintiff's petition, an informal response by the jail medical
24      staff to Plaintiff's allegations, and Plaintiff's reply to the informal
        response, and it does not appear that Plaintiff had an opportunity to
25      conduct discovery in that action. (Ex. G to Req. for Jud. Notice (Mar. 7,
        2006 Amended Order Denying Petition for Writ of Habeas Corpus), at 1).
26      The "inability to make full use of discovery or evidence in the first forum

1    may justify subsequent relitigation." Wright & Miller, Federal Practice and
     Procedure § 4423; see also Parklane Hosiery Co. v. Shore, 439 U.S. 322,
2    331 n.15 (1979) ("If, for example, the defendant in the first action . . . was
     unable to engage in full scale discovery or call witnesses, application of
3    offensive collateral estoppel may be unwarranted.  Indeed, differences in
     available procedures may sometimes justify not allowing a prior judgment
4    to have estoppel effect in a subsequent action even between the same
     parties, or where defensive estoppel is asserted against a plaintiff who has
5    litigated and lost").

6    The district judge concluded that "it is unclear whether the March 7, 2006, state court decision

7    precludes Plaintiff's current action."

8          **C.    Undisputed Facts**

9                Defendants offer various declarations purporting to establish the undisputed facts

10   of this case.  These facts are outlined below as to each defendant:

11               Defendant Hambly

12               1.    Defendant Hambly last provided medical services at the Placer County Jail
                       on June 22, 2003; and
13
14               2.    Defendant Hambly did not provide any treatment to plaintiff in 2005 or
                       2006.

15               Defendant Hendricks

16               1.    Defendant Hendricks is a registered nurse and Program Manager for
                       medical care provided at the Placer County Jail;
17
18               2.    Defendant Hendricks does not make medical decisions regarding referrals
                       for possible surgical intervention;

19               3.    Such decisions are made by medical doctors;

20               4.    If a doctor decided that surgical intervention was warranted, defendant
                       Hendricks would arrange for the surgery to take place;
21
22               5.    Defendant Hendricks arranges for inmate examinations by a doctor;

23               6.    Dr. Duncan was in charge of plaintiff's care at the Placer County Jail;

24               7.    Dr. Duncan authorized his physician's assistant, Steve Frank, to provide
                       care to plaintiff;

25               8.    During the entire time that plaintiff was incarcerated at the Placer County
                       Jail, plaintiff had a left inguinal hernia the size of a fingertip which Dr.
26                     Duncan considered stable;

9.   At no time did Dr. Duncan believe that a surgical consultation was
     necessary;

10.  Defendant Hendricks spoke with plaintiff in March 2006 concerning
     plaintiff's request for an outside consultation with Dr. Bannister and
     informed plaintiff that Dr. Bannister only accepted referrals relating to
     medical marijuana; and

11.  Plaintiff made no further requests for outside consultation.

Defendant Padilla

1.   Prisoners at the Placer County Jail must follow the "sick call" protocol
     which requires prisoners to fill out a "Request for Medical Care" form
     prior to being seen by medical staff;

2.   The form must be put in the "pod" or "tank" mailbox prior to lockdown
     for the evening, or given to the nurse during "pill pass;"

3.   Upon receiving a form, the nurse establishes a "sick call list" for the day;

4.   Plaintiff did not follow this procedure with respect to his March 2006
     request to see the physician's assistant;

5.   At no time on March 22, 2006, did plaintiff present with an emergent or
     serious medical condition;

6.   After returning to his housing unit on March 22, 2006, plaintiff did not
     complain of any emergent or serious condition; and

7.   Plaintiff did not file any inmate grievance relating to defendant Padilla.

     Plaintiff largely does not dispute these facts and, to the extent he does, he merely

denies them without offering any evidence.  There is one exception.  As to defendant Padilla's

contention that plaintiff never filed an inmate grievance, plaintiff attaches to his opposition a

document dated November 5, 2005, purporting to be a grievance.  This document does not,

however, mention defendant Padilla or specifically describe his complaint regarding surgical

consultation.

/ / /

/ / /

/ / /

/ / /

6

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

7

1   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2   of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

3   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

4   that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

5   for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

6           In the endeavor to establish the existence of a factual dispute, the opposing party

7   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

8   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

9   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

10  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

11  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

12  committee's note on 1963 amendments).

13          In resolving the summary judgment motion, the court examines the pleadings,

14  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

15  any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See

16  Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

17  before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

18  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

19  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

20  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

21  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

22  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

23  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

24  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

25  / / /

26  / / /

8

### III.  DISCUSSION

All three named defendants have filed separate motions for summary judgment on plaintiff's Eighth Amendment medical care claims.  The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

9

1   activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

2   Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

3            The requirement of deliberate indifference is less stringent in medical needs cases

4   than in other Eighth Amendment contexts because the responsibility to provide inmates with

5   medical care does not generally conflict with competing penological concerns.  See McGuckin,

6   974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

7   decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

8   1989).  The complete denial of medical attention may constitute deliberate indifference.  See

9   Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

10  treatment, or interference with medical treatment, may also constitute deliberate indifference.

11  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

12  demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

13           Negligence in diagnosing or treating a medical condition does not, however, give

14  rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

15  difference of opinion between the prisoner and medical providers concerning the appropriate

16  course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

17  90 F.3d 330, 332 (9th Cir. 1996).

18       **A.    Defendant Padilla**

19           As to defendant Padilla, plaintiff alleges:

20               On 3/22/06, while in jail medical for blood draw I was in more
             than usual pain, even having trouble walking and standing up straight.  I
21           asked Officer Padilla to see the physician's assistant, Steve Frank, but
             Officer Padilla told me he didn't have time for me.  I told Padilla it was an
22           emergency but she told me I would have to submit a request to see the Dr.
             and therefore denying me medical care deliberately in my emergency.
23

24  In her motion for summary judgment, defendant Padilla argues:

25               . . . [T]here is no dispute as to a material fact and as a matter of law
             Officer Padilla is entitled to summary judgment pursuant to F.R.C.P. 56
26           for the following reasons: (1) Officer Padilla's actions did not violate

1    plaintiff's constitutional rights under the Eighth Amendment; (2) Officer
     Padilla is protected from the present action by qualified immunity;
2    (3) plaintiff did not exhaust his administrative remedies pursuant to the
     Prison Litigation Reform Act [42 U.S.C. § 1997e(a)]; and (4), the present
3    action is barred by the doctrine of collateral estoppel and issue preclusion.

4        1.    <u>Preclusion</u>

5        Defendant Padilla renews defendant Hendricks' earlier argument that this action is

6   barred by the state court's March 7, 2006, order.  In his order denying defendant Hendricks'

7   motion to dismiss based on preclusion, the district judge stated that the issue in the state court

8   habeas petition was "whether the denial of the surgery that Plaintiff requested constituted a

9   violation of Plaintiff's rights" and that the issue in this case is "whether the denial of Plaintiff's

10  request for further consultation constituted a violation of Plaintiff's rights."  The district judge

11  noted the following uncertainties which precluded granting the motion to dismiss:

12       a.    "Because Plaintiff's state habeas petition and the state court's order
               focused specifically on whether the correctional institution was required to
13             provide Plaintiff with the surgery he requested, it is unclear whether that
               court adjudicated the precise issue presented in this action";
14
15       b.    "Moreover, it is unclear whether Plaintiff's allegations in the current
               action are based on conduct that occurred after the state court decision
               issued since it is unclear whether the request for further consultation that
16             Plaintiff references in his amended complaint was made and/or denied
               after the state court decision issued";
17
18       c.    "It is unclear when [plaintiff's] conditions developed and/or whether these
               conditions are more serious than an uncomplicated inguinal hernia"; and

19       d.    "Moreover, it is unclear whether the issues adjudicated in the state court
               action were fully and fairly adjudicated therein since the state court based
20             its decision to deny Plaintiff's petition for writ of habeas corpus on only
               Plaintiff's petition, an informal response by the jail medical staff to
21             Plaintiff's allegations, and Plaintiff's reply to the informal response, and it
               does not appear that Plaintiff had an opportunity to conduct discovery in
22             that action."

23  Defendant Padilla does not offer any evidence tending to settle any of these uncertainties.

24  Therefore, for the reasons previously outlined by the district judge, the court finds that this action

25  is not necessarily barred by either issue or claim preclusion.

26  ///

1        2.      Exhaustion

2    Defendant Padilla argues:

3            Plaintiff did not attempt to exhaust his administrative remedies.
     He did not file a grievance relating to Officer Padilla's alleged conduct.
4    [Undisputed Fact No. 20].  He simply filed his complaint 6 days later on
     March 28, 2006.  This is the exact situation that 42 U.S.C. § 1997e(a) was
5    intended to prevent.  Plaintiff's claim should be dismissed.

6    In support of this argument, defendant Padilla offers her own declaration in which she states that,

7    at the times relevant to this case, the Placer County Jail grievance procedures conformed to

8    California Code of Regulations, Title 15.  She also states:  "At no time prior to the filing of the

9    present complaint did plaintiff file a grievance against me as a result of my actions on March 22,

10   2006."

11          Prisoners seeking relief under § 1983 must exhaust all available administrative

12   remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory

13   regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

14   Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

15   the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

16   while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The

17   Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 127 S.Ct. 910

18   (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in

19   the complaint because lack of exhaustion is an affirmative defense which must be pleaded and

20   proved by the defendants; (2) an individual named as a defendant does not necessarily need to be

21   named in the grievance process for exhaustion to be considered adequate because the applicable

22   procedural rules that a prisoner must follow are defined by the particular grievance process, not

23   by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some,

24   but not all, claims are unexhausted.  The Supreme Court also held in Woodford v. Ngo that, in

25   order to exhaust administrative remedies, the prisoner must comply with all of the prison

26   system's procedural rules ". . . so that the agency addresses the issues on the merits."   126 S.Ct.

1  2378, 2385-88 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical
2  procedural rules."  Id. at 2386.  Partial compliance is not enough.  See id.

3          A prison inmate in California satisfies the administrative exhaustion requirement
4  by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of
5  Regulations.  In California, inmates "may appeal any departmental decision, action, condition, or
6  policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code
7  Regs. tit. 15, § 3084.1(a).  These regulations require the prisoner to proceed through several
8  levels of appeal:  (1) informal resolution; (2) formal appeal; (3) second level appeal to institution
9  head; (4) third level appeal to the director of the California Department of Corrections and
10 Rehabilitation.  A decision at the third formal level, which is also referred to as the director's
11 level, is not appealable and concludes a prisoner's departmental administrative remedy.  See Cal.
12 Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). Departmental appeals coordinators may
13 summarily reject a prisoner's untimely administrative appeal.  See Cal. Code Regs. tit. 15, §§
14 3084.3(c)(6) and 3084.6(c).  Currently, California regulations do not contain any provision
15 specifying who must be named in the grievance.

16         As indicated above, plaintiff attaches to his opposition a grievance dated
17 November 5, 2005, purporting to relate to the subject of this action.  The court finds, however,
18 that this document is insufficient to satisfy the exhaustion requirement.  Specifically, the
19 grievance was filed in November 2005 – before March 22, 2006, which is when plaintiff claims
20 defendant Padilla denied him access to the physician's assistant.  Therefore, the grievance could
21 not have related to his claim against defendant Padilla.  For this reason alone, plaintiff's claim
22 against defendant Padilla must be dismissed.

23 / / /
24 / / /
25 / / /
26 / / /

1      3.    Deliberate Indifference

2            As to the merits of plaintiff's Eighth Amendment claim, defendant Padilla argues

3   that there is no evidence of deliberate indifference to any serious medical need.  In particular, she

4   states that, when plaintiff asked her for permission to see the physician's assistant, she did not

5   deny access but, instead, referred plaintiff to the "sick call" procedure.  Defendant Padilla also

6   states that, at no time on March 22, 2006, was plaintiff suffering from an emergent or serious

7   medical problem.  In fact, according to defendant Padilla, plaintiff never complained again that

8   day of a medical problem.  In opposition, plaintiff states generally that he had a hernia, but does

9   not state specifically how that condition manifested itself as an emergency situation on March 22,

10  2006.  For these reasons, the court finds that plaintiff cannot establish deliberate indifference by

11  defendant Padilla.

12          **B.    Defendant Hambly**

13          Defendant Hambly argues in his motion that plaintiff "makes no reference to Dr.

14  Asa Hambly, M.D. in the 'Facts' portion of the Amended Complaint. . . ."  Defendant Hambly

15  also argues:

16                  In any event, the facts in this case are clear (UMF 1 and 2) that at
            the time complained of by Plaintiff in 2005 (Original Complaint,
17          paragraph IV) and 2006 (Amended Complaint, "Facts" paragraph 3) Dr.
            Asa Hambly, M.D. was not employed to provide medical services at the
18          Placer County Jail.  In fact (UMF 1 and 2) Dr. Hambly had last performed
            services at the Placer County Jail in June 2003 and, therefore, was not
19          working at the jail at the time that Plaintiff alleges the hernia was
            purportedly identified (Original Complaint, paragraph IV) or at the time
20          alleged in the Amended Complaint, 2006, when a "request for surgeons
            [sic] appointment" was purportedly denied by another Defendant
21          (Amended Complaint, "Facts," paragraph 2, page 3).

22  In support of this argument, defendant Hambly submits his own declaration and the declaration

23  of Alicia Lewis, who is in charge of "keeping track of the time worked by physicians performing

24  services in County Jail through contracts with California Forensic Medical Group, Inc.," which is

25  where defendant Hambly works.  Both state that defendant Hambly did not provide medical

26  services at the Placer County Jail after June 22, 2003.

1   　　　　There is nothing in the amended complaint (or the original complaint for that

2   matter) indicating that defendant Hambly was in any way involved in evaluation of plaintiff's

3   hernia or the decision not to recommend surgery.  Rather, in the original complaint, plaintiff

4   makes it clear that Dr. Duncan was the person who decided against surgical intervention.  Given

5   plaintiff's allegation in the original complaint that defendant Hambly is the director of Forensic

6   Medical Group, it appears that plaintiff may be asserting supervisory liability.  However, a

7   supervisor is only liable for the constitutional violations of subordinates if the supervisor

8   participated in or directed the violations, or had actual knowledge of the violations and failed to

9   act to prevent them.  See id.  When a defendant holds a supervisory position, the causal link

10  between him and the claimed constitutional violation must be specifically alleged.  See Fayle v.

11  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

12  1978).  Because plaintiff has not alleged any personal involvement or knowledge on the part of

13  defendant Hambly, he cannot be liable for the conduct of Dr. Duncan or physician's assistant

14  Steve Frank.  For these reasons, defendant Hambly is entitled to summary judgment.

15  　　　**C.**　　**Defendant Hendricks**

16  　　　　Defendant Hendricks argues:

17  　　　　　　There is no question (UMF 4, 7, 10, and 11) that the medical
    decisions concerning the care and treatment of Plaintiff and the question
18  whether a surgical consultation was necessary, were decisions made by the
    physician and not Defendant Hendricks, the nurse.  Defendant, then, did
19  not make the medical decision that the clinical presentation of Plaintiff did
    not justify a surgical consult.
20  　　　　　　Defendant did, however, (UMF 13, 14, and 15) follow up on
    Plaintiff's request to be seen by Dr. Bannister only to find that Dr.
21  Bannister only accepted patients with issues related to medical marijuana
    (UMF 16).
22  　　　　　　Defendant Hendricks, then, did not interfere with any decision by
    Dr. Duncan with respect to Plaintiff's condition and whether a surgical
23  consult was appropriate.  Dr. Duncan made the decision that related to
    Plaintiff's care.

24

25  / / /

26  / / /

1   In support of this argument, defendant Hendricks offers her own declaration and the declaration

2   of Dr. Duncan, who provided treatment to plaintiff at the Placer County Jail.  Both make clear

3   that Dr. Duncan was responsible for medical decisions in plaintiff's case and that defendant

4   Hendricks had only an administrative role that did not affect plaintiff.

5            Further, Dr. Duncan states that, in his opinion, plaintiff's hernia was "mild and

6   uncomplicated" and stable.  Dr. Duncan did not believe that plaintiff's condition required

7   surgery.  In particular, Dr. Duncan states that he examined plaintiff as late as September 14, 2006

8   (after the amended complaint was filed), and believes that plaintiff's hernia is unchanged since

9   his initial examinations in 2005.  As to the sonogram results submitted by plaintiff in opposition

10  to Defendant Hendricks' prior motion to dismiss, Dr. Duncan states:

11           I reviewed the scrotal sonogram report from Medical Imaging
             Center of Bakersfield attached to Mr. Kitchen's Supplement Filing of
12           Supporting Documents filed with this court on November 20, 2007.  The
             report which is attached to my declaration as Exhibit B concludes that Mr.
13           Kitchen has:  (1) left epididymal head cyst; and (2) a left inguinal hernia
             with peristaltic bowel in the canal.  The measurements of the hernia are
14           entirely consistent with my examination of Mr. Kitchen and do not reflect
             a change in his condition.  It is my professional opinion based on my years
15           of experience, training and knowledge that the condition reflected in the
             report only confirms the presence of the hernia previously described and
16           does not constitute a new issue or concerns.  This report does not change
             the medical treatment which remains as an elective surgical procedure.
17

18  According to Dr. Duncan, plaintiff has not developed any worsening or new serious medical

19  condition.

20           The court finds that Dr. Duncan's declaration is dispositive of plaintiff's Eighth

21  Amendment claim given that, in Dr. Duncan's opinion, plaintiff's hernia did not require surgery.

22  At best, plaintiff's claim is based on his disagreement with this opinion, not deliberate

23  indifference.  As stated above, a difference of opinion between the prisoner and medical

24  providers concerning the appropriate course of treatment does not give rise to an Eighth

25  Amendment claim.  See Jackson, 90 F.3d at 332.  Not only is defendant Hendricks entitled to

26  summary judgment, plaintiff's entire claim against all defendants is foreclosed for this reason.

IV.  **CONCLUSION**

Based on the foregoing, the undersigned recommends that defendants' motions for summary judgment (Docs. 50, 58, and 60) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  May 5, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE